UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | No. 11 B 35376 |
| | ) | |
| ARTIE LEE BRINSON, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ARTIE LEE BRINSON, | ) | No. 11 A 02449 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This adversary proceeding is related to a Chapter 13 bankruptcy case filed by debtor Artie Lee Brinson ("Brinson"). Brinson has several years of federal income tax debts, some of which he concedes are nondischargeable. The Internal Revenue Service ("IRS") claims a lien securing most or all of the tax debts. Brinson has sued the United States of America seeking to void the IRS lien on his personal property pursuant to 11 U.S.C. § 506(d) (Count I); seeking determination as to the dischargeability of his tax debts pursuant to 11 U.S.C. § 523(a)(1) (Count II); to fix the priority of his tax debts pursuant to 11 U.S.C. § 507(a)(8) (Count II); and for a declaratory judgment determining the dischargeability and priority of his tax debts pursuant to 28 U.S.C. § 2201 (Count III).

The United States moved for "partial dismissal" of the Brinson Complaint, but its motion is not explicitly directed to any specific Count. The motion seeks to dismiss the Complaint "except to the extent it seeks a determination of dischargeability." Count II is the only Count seeking determination of dischargeability. The motion also contends that the Complaint should be dismissed for lack of subject matter jurisdiction, for lack of personal jurisdiction based on sovereign immunity, and for failure to state a claim pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure [made applicable in bankruptcy by Rule 7012 of the Fed. R.

1

Bankr. P.]. These asserted grounds apply to Counts I and III. Count II is not addressed by the Motion.

In opposition to the United State's Motion Brinson argues, in sum, that § 106(a) of the Bankruptcy Code, Title 11 U.S.C., is an explicit waiver of the United States' sovereign immunity, and the ultimate decision as to Plaintiff's ability to strip the United States' lien under § 506(d) therefore does not abrogate sovereign immunity. He also argues that the plain language of §§ 506(a) and 506(d) allows the court to value and bifurcate the Government's claim into secured and unsecured parts, and that § 506(d), not § 1322(b)(2), operates to void the Government's liens that are not supported by property equity. He further argues that the U.S. Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) does not apply in Chapter 13 cases and does not forbid stripping off of the Government's liens. Finally, Brinson argues that his Complaint does seek a determination as to the size of his tax debt due for each tax year, and therefore falls within §505(a)(1) of the Bankruptcy Code.

## JURISDICTION

District courts have exclusive jurisdiction over bankruptcy cases, pursuant to 28 U.S.C. § 1334(a), and they have concurrent jurisdiction over all civil proceedings "arising under" the Bankruptcy Code, pursuant to 28 U.S.C. § 1334(b). The determination of a creditor's secured status sought under § 506(a) "arises under" the Bankruptcy Code, and is within the District Court's jurisdiction. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987) ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.").

Pursuant to 28 U.S.C. § 157(a) and its own Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has referred its bankruptcy cases and matters to the bankruptcy judges of this district. When presiding over a referred case, the bankruptcy judge has authorization under 28 U.S.C. § 157(b)(1) to enter appropriate orders and judgments as to core issues within the case. Determination as to the dischargeability of particular debts and the determination of the validity, extent, or priority of liens are core proceedings under 28 U.S.C. § 157(b)(2)(I) and (K), respectively. Proceedings "arising under" the Bankruptcy Code are core proceedings. *Id.*

Venue lies under 28 U.S.C. § 1409(a).

## SOVEREIGN IMMUNITY

The United States has first challenged jurisdiction in the Complaint filed by Brinson on the ground of sovereign immunity. It contends that the Bankruptcy Code § 506(d) claim in Count I of the Brinson Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and also for lack of *in personam* jurisdiction pursuant to Rule 12(b)(2) based on assertion of United States sovereign immunity.

The United States does concede that § 106 of the Bankruptcy Code "abrogates the United States' sovereign immunity to the extent set forth in certain other sections of the Bankruptcy Code, including section 502." However, Congress also unequivocally abrogated sovereign immunity of the United States with respect to Bankruptcy Code § 506. Section 106(a)(1) of the Bankruptcy Code provides in pertinent part that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Sections . . . 502, 503, 505, 506 . . . of this title." *See* 11 U.S.C. § 106(a)(1). The extent of the express abrogation is broad: A bankruptcy judge is thereby empowered to "hear and determine any issue arising with respect to the application" of § 506 to the United States. 11 U.S.C. § 106(a)(2). There is no question that the United States is subject to claims under § 506. *See In re Nicks,* No. 12 C 1360, 2012 WL 3133618, at *2 (N.D. Ill. July 31, 2012); *Berkebile v. Ocwen Loan Serv., LLC ( In re Berkebile),* 444 B.R. 326, 334 (Bankr .W.D. Pa. 2011); *In re Louis Jones Enters., Inc.,* No. 10 B 11375, 2010 WL 1726820, at *1 (Bankr. N.D. Ill. Apr. 27, 2010).

Nevertheless, the Government contends that because § 506(d) does not expressly permit lien stripping, sovereign immunity has not been abrogated to permit it. Therefore, it argues, sovereign immunity has not been abrogated despite § 106(a) and dismissal under Rules 12(b)(1) and (b)(2) appropriate.

Sovereign immunity is not jurisdictional but rather a waivable affirmative defense; it "concerns the remedy rather than adjudicatory competence." *Blagojevich v. Gates,* 519 F.3d 370, 371 (7th Cir.2008); *see also Libertarian Party of Ill. v. Illinois State Bd. of Elections,* No. 12 C 2511, 2012 WL 3880124, at *1 n.1 (N.D. Ill. Sept. 5, 2012). The asserted deficiency of Brinson's § 506(d) claim does not negate the abrogation of sovereign immunity in § 106(a). In arguing that it does, the IRS confuses the merits of Brinson's claim with the court's subject matter jurisdiction. But it is "firmly established . . . that the absence of a valid (as opposed to arguable)

3

cause of action does not implicate subject matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998) (emphasis in original); *see also Verizon Md., Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635, 642-43 (2002); *Jogi v. Voges,* 480 F.3d 822, 825 (7th Cir. 2007); *see also Ryan v. United States of America (In re Ryan),* No. 11 A 01793, 2012 WL 4959632, at *2 (Bankr. N.D. Ill. Oct. 17, 2012) (Goldgar, J.) (rejecting the same arguments as those used here by the IRS).

The merits of Brinson's claim have no bearing on whether the United States is immune from the action in which the claim is asserted. Therefore, the motion to dismiss Brinson's Complaint based on the asserted sovereign immunity ground will be denied.

## FACTS

Brinson filed his adversary proceeding to void the liens of the IRS and classify its claims as unsecured claims under 11 U.S.C. § 506(a) and (d), and "strip off" the unsecured portion of those liens. He also seeks a declaratory judgment as to the secured status of the IRS' claim. The United States filed a proof of claim in the total amount of $49,850.80, $41,004.86 of which it claimed to have priority status, for Brinson's tax liabilities for the 2006 through 2010 income tax years.

Brinson filed a voluntary Chapter 13 bankruptcy petition on August 30, 2011 ("Petition Date"). He indicated on his schedules the following assets: (1) entitlement to an employer-funded pension; (2) two depository accounts, both with nominal balances; (3) various household goods valued at approximately $2,145; (4) a one-half interest in a 2010 Dodge Caravan, with a fair market value of $24,525 and encumbered by a lien in the amount of $22,717; (5) a 2010 Dodge Ram 1500, with a fair market value of $16,750 and encumbered by a $20,590 lien; and (6) a 2001 Honda Accord, with a fair market value of $2,325 and encumbered by an $800 lien. Brinson states on his Schedule B that the aggregate value of his personal property at the time of filing was $45,747.00. (11 B 35376, Dkt. No. 1) He claims exemptions totaling at least $6,354.

As of the Petition Date, Brinson owed the following tax debts:

| Tax Year Ending | Amount |
| --- | --- |
| Dec. 31, 2006 | $12,038.47 |
| Dec. 31, 2007 | $9,006.09[1] |

---

[1] Brinson alleges in his Complaint that $9,111.78 is owed for the 2007 tax year. The IRS denies that allegation and answers that $9,006.09 is due for that tax year.

4

|                |                |
|----------------|----------------|
| Dec. 31, 2008  | $8,791.02[2]   |
| Dec. 31, 2009  | $6,877.37[3]   |
| Dec. 31, 2010  | $4,773.10[4]   |

On July 13, 2011, the IRS recorded a lien with the Cook County Recorder of Deeds for the tax debt owed by Brinson for the 2007 tax year. On July 19, 2011, the IRS also recorded a lien with the Cook County Recorder of Deeds for tax debts owed by Brinson for all of the subject tax years, including 2007, but excluding 2010, for which no tax lien has been filed. Both the 2006 and 2007 tax returns were due more than three years before the Petition Date. The 2007 tax return was filed more than two years before the Petition Date, and only $952 of the tax debt owed was assessed within 240 days before the Petition Date. The 2006 tax debt was assessed more than 240 days before the Petition Date.

In his Complaint, Brinson pleads three counts. Count I seeks to determine the nature and extent of the IRS' liens and to strip off the unsecured portion of such liens pursuant to § 506(a) and (d) of the Bankruptcy Code. Brinson asserts that the aggregate value of his possessions listed in his Schedule B is $3,672. He further asserts that, pursuant to 26 U.S.C. § 6231 (the "Internal Revenue Code" or "IRC"), a federal tax lien attaches to all of the debtor's property or right to property. Therefore, Brinson asserts that the total value of the allowable IRS secured claim for all tax years is $3,672.

Count II of the Complaint seeks to determine the dischargeability and priority of tax debt due to the IRS pursuant 11 U.S.C. § 523(a)(1) and § 507(a)(8). Brinson asserts that the 2007 tax return was due more than three years before the Petition Date, was filed more than two years before the Petition Date, and only the $952 additional tax assessed by the IRS was within 240 days before the Petition Date. Pursuant to § 507(a)(8), allowed unsecured claims of governmental units for taxes on income for pre-petition taxable years have priority if a return is required and last due within three years before the petition date and assessed within 240 days

---

[2] Brinson alleges in his Complaint that $8,854.74 is owed for the 2008 tax year. The IRS denies that allegation and answers that $8,791.02 is due for that tax year.
[3] Brinson alleges in his Complaint that $6,927.61 is owed for the 2009 tax year. The IRS denies that allegation and answers that $6,877.37 is due for that tax year.
[4] Brinson's Complaint alleges that $4,809.69 is owed for the 2010 tax year. The IRS denied that allegation and answered that $4,773.10 is due for that tax year.

before the petition date. Under § 523(a)(1) a tax liability is not dischargeable if it is pursuant to § 507(a)(8) or was not filed or filed late and filed more than two years before the petition date.

Therefore, of the $9,111.78 total tax liability owed, $8,159.78 is non-priority, dischargeable and unsecured, and $952 is priority, dischargeable and unsecured. Brinson further asserts that the 2006 tax return was due more than three years before the Petition Date and was assessed more than 240 days before the Petition Date. Therefore, he asserts that the entire $12,130.41 should be classified as a non-priority, unsecured debt.

Count III of the Brinson Complaint seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 as to the rights of Brinson and the correct classification and treatment of the IRS' liens and claims.

Brinson thereby seeks to classify the IRS' claim as follows: (1) the $4,809.69 2010 tax debt as a priority, nondischargeable, unsecured debt (because no lien was recorded); (2) the 2009 tax debt as secured to the extent of the value of Brinson's property with the remaining portion of the lien, i.e., $3,255.61 as a priority, nondischargeable, unsecured debt; (3) the 2008 tax debt of $8,854.74 2008 to be treated as a priority, nondischargeable, unsecured debt; (4) the 2007 tax debt to be treated as a non-priority, dischargeable, unsecured debt in the amount of $8,159.78 and as a priority, dischargeable, unsecured debt in the amount of $952; and (5) the $12,130.41 2006 tax debt as a non-priority, unsecured debt. In addition, Brinson seeks an order for the Government to release its lien except to the extent that the IRS has an allowed secured claim and to release the remaining lien when, as, and if a discharge is entered in his underlying Chapter 13 bankruptcy case.

## DISCUSSION

### *Answer Filed by United States Prior to Its Motion to Dismiss*

A procedural matter must be addressed with respect to the Government's remaining motion to dismiss the Brinson complaint pursuant to Rule 12(b)(6). Its motion for "partial dismissal" was filed on June 21, 2012, well after it filed an Answer to Brinson's Complaint on December 30, 2011, rendering the Motion to Dismiss untimely. Under Rule 12(b), a motion to dismiss for failure to state a claim "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).

Nevertheless, a Rule 12(b)(6) Motion to Dismiss for failure to state a claim filed after an Answer is filed shall be considered under Rule 12(c) as a motion for judgment on the pleadings that is to be evaluated under the same standard as a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(h)(2)(B); *see also Ryan v. U.S. (In re Ryan)*, No. 11 A 1793, 2012 WL 4959632, at *2 (*citing Alioto v. Town of Lisbon,* 651 F.3d 715, 718 (7th Cir. 2011)). Since the Government's motion can be considered under Fed. R. Civ. P. 12(c), which provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings," the Motion to Dismiss will be considered here as one pursuant to Rule 12(c).

### *Motion to Dismiss Standard*

A motion to dismiss under Rule 12(b)(6) and Rule 12(c) accepts all well-pleaded allegations in the complaint as true and requires all reasonable inferences to be drawn in favor of the non-movant. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010); *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2010), *cert. denied*, 133 S. Ct. 353 (2012).

To survive a motion to dismiss under Rule 12(b)(6): "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)); *accord Reger*, 592 F.3d at 764. Under this standard, "a plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.* (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).

### **Asserted Failure to State a Claim**

Resolution of the Motion depends on the relationship between several provisions of the Code governing lien avoidance and Supreme Court precedent interpreting those provisions.

*11 U.S.C. § 506(a)*

The IRS argues that § 506(a) of the Bankruptcy Code does not provide for the strip off or strip down of a lien.[5] That section provides in relevant part:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent of the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).

The IRS contends that § 506(a) may be used to value the claims of holders of secured claims, but not to modify the secured claim. It cites several cases for support of this position. For example, in *In re Fenn*, 428 B.R. 494 (Bankr. N.D. Ill. 2010), the Chapter 13 debtor sought to bifurcate and avoid a creditor's lien pursuant to § 506(a). The bankruptcy judge rejected that attempt, finding that "§ 506(a) allows the bifurcation of the rights of holders of secured claims, rather than the modification of a secured claim. It does not change the rights immediately allowing the permanent modification of a secured claim to unsecured status, as strip off or avoidance occurs at discharge." *Id.* at 501; *see also In re Gerardin*, 447 B.R. 342, 350 (Bankr. S.D. Fla. 2011).

Brinson does not appear to dispute this particular point. Instead, he argues that IRS' liens may be voided pursuant to § 506(d).

*11 U.S.C. § 506(d)*

The IRS argues that 11 U.S.C. § 506(d) is insufficient, by itself, to strip a lien. It cites several opinions holding that § 506(d) must be used in conjunction with another Code provision to effectuate lien stripping. Section 506(d) states in relevant part that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ." The power to void liens has several limits found elsewhere in the Code. In addition, the Supreme

---

[5] Although not defined in the Code, the term "strip off" is used when a junior mortgage is not supported by any value in the underlying collateral. *Talbert v. City Mortg. Servs. (In re Talber)*, 344 F.3d 555, 556 n.1 (6th Cir. 2003). The term "strip down" is used when a junior mortgage is only partially supported by value in the underlying collateral. *Id.*

8

Court's interpretation of the provision in the context of Chapter 7 also arguably constrains Chapter 13 debtors' attempts to void liens.

The IRS first states that the Supreme Court, in *Dewsnup v. Timm*, 502 U.S. 410, 416–17 (1992), held that § 506(d) is insufficient to strip a lien. In *Dewsnup*, the Chapter 7 debtor, commenced an adversary proceeding to determine the validity and extent of a creditor's lien, which totaled about $120,000, on her property. *Id.* at 413. Upon the bankruptcy filing, the land was valued far below the amount of the debt. *Id.* Thus, the debtor asked the Bankruptcy Court to reduce the first lien to the fair market value of the land under § 506(d) of the Bankruptcy Code. *Id.* The question faced by the Supreme Court was whether the first mortgage should be considered an "allowed secured claim" under § 506(d) even though the amount of the claim far exceeded the fair market value of the collateral, so that the debtor would be able to reduce the secured debt to the fair market value of the land. *Id.* at 411.

In considering the opposing arguments, the *Dewsnup* Opinion analyzed the purpose and meaning of § 506(d). The Opinion adopted one interpretation of the statute that gave the provision the "sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed." *Id.* at 415–16. The Court elaborated, "[section 506(d)] ensures that the Code's determination not to allow the underlying claim against the debtor personally is given full effect by preventing its assertion against the debtor's property." *Id.* at 416. Under this view, the only other provision needed to carry out the provisions function is § 502, which governs the claims allowance process. *See id.* at 415. *Dewsnup* held that § 506(d) cannot be used to strip-down a lien to the fair market value of the underlying collateral. *Id.* at 417. That section, according to *Dewsnup*, would operate to void a lien only to the extent that the claim to which it relates is disallowed. *Id.* at 415.

Brinson argues that *Dewsnup* does not apply in Chapter 13 cases. He cites language from that Opinion suggesting the Court intended to limit its holding to the facts then presented, to wit: "hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day" *Id.* at 416–17. Brinson also points to the policy underlying the *Dewsnup* decision. The Opinion stated that Congress likely did not intend to depart from the pre-

Code rule that a creditor's liens on real property pass through bankruptcy unaffected. *See Johnson v. Home State Bank,* 501 U.S. 78, 84 (1991).

Indeed, several opinions have held that *Dewsnup's* prohibition against lien stripping does not apply in the reorganization chapters of the Code. Most notably, a District Judge in this District has recently ruled that a Chapter 13 debtor may strip a lien held by a secured creditor. *Nicks v. U.S. (In re Nicks),* No. 11 A 1671, 2012 WL 3133618 (N.D. Ill. July 31, 2012) (Guzman, J.). In that case, a Chapter 13 debtor appealed dismissal of his adversary complaint seeking to strip down liens held by the IRS. *Id.* at 1. The Bankruptcy Judge dismissed the complaint, holding that because *Dewsnup* applied in Chapter 13 the debtor could not strip down the lien under § 506. *Id.* That decision was reversed on appeal. *Id.* at *1. The District Judge held that "*Dewsnup* does not bar Debtor from invoking § 506(a) and (d) to reduce [the creditor's] secured claim." *Id.* at *4.

The *Nicks* Opinion was persuaded by reasons articulated in another opinion, *In re Hernandez,* 175 B.R. 962, 965-67 (N.D. Ill. 1994). Based on *Hernandez*, the District Judge reasoned:

> In the pre-Code counterpart to Chapter 13, debtors could not affect the rights of secured claim holders . . . . This pre-Code practice was changed by the Bankruptcy Reform Act of 1978, which . . . allows [Chapter 13] debtors to create a plan, binding on all creditors regardless of consent, that delivers the property of the estate to the debtor free and clear of creditor's claims and interests . . . . [Section 1327] provides the type of evidence of Congress's intent to change the pre-Code practice that the Supreme Court found wanting in *Dewsnup*.
>
> The purpose of Chapter 13 also militates against extending *Dewsnup*. One of the purposes of Chapter 13 is to encourage consumer debtors to gradually use their earnings to repay their obligations without resorting to a Chapter 7 liquidation, possibly to the benefit of their creditors . . . . The goal of providing debtors with a fresh start is also furthered by allowing debtors to own property free and clear of creditor's liens after designing and completing a plan of reorganization. Allowing the modification of creditor's liens furthers both of these purposes . . . .
>
> Given the language of sections 1322 [stating that a Chapter 13 plan can modify the rights of holders of claims secured by property other than a principal residence] and 1327 [stating that a confirmed plan vests all property in the debtor "free and clear" of any creditor's interest], the purpose of Chapter 13 of the Bankruptcy Code, and the persuasive analysis of many other courts that have considered this issue, the Court holds that *Dewsnup* is not applicable to the Chapter 13 proceedings at issue in this case.

The foregoing excerpt recognized provisions other than § 506 in stripping a lien but the *Nicks* Opinion did not explain the relationship between § 506 and provisions of Chapter 13. The debtor in *Nicks* apparently sought relief only under § 506 and not under the reorganization provisions in Chapter 13. *See id.* at *1. However, the reasoning in *Nicks* relied very much on the reorganization provisions found in Chapter 13. Therefore, Brinson cannot rely entirely on *Nicks* for the proposition that § 506 by itself operates to void the IRS' liens in this case.

Nevertheless, the reasoning of *Hernandez* and *Nicks* persuasively argues against applying *Dewsnup* in Chapter 13 cases when debtors invoke provisions in that Chapter for relief. Several other precedents have held *Dewsnup* does not apply in Chapter 13 for the reasons articulated in *Hernandez* and adopted in *Nicks*. *See, e.g., Woolsey v. Citibank, N.A.,* 696 F.3d 1266 *(In re Woolsey),* (10th Cir. 2012) ("Not only does *Dewsnup's* reasoning rest on peculiarities of the Chapter 7 context bearing little relevance to Chapter 13 practice, the case expressly instructs us to read its holding narrowly."); *Enenwally v. Wash. Mut. Bank (In re Enewally),* 368 F.3d 1165, 1170 (9th Cir. 2004) ("The rationales advanced in the *Dewsnup* opinion for prohibiting lien stripping in Chapter 7 bankruptcies . . . have little relevance in the context of rehabilitative bankruptcy proceedings under Chapter 11, 12, and 13, where lien stripping is expressly and broadly permitted.") (quotation omitted). It is well established that lien stripping is permissible in Chapter 13. *See also In re Pond,* 252 F.3d 122 (2nd Cir. 2001) (permitting the strip off of wholly unsecured junior liens on a Chapter 13 debtor's principal residence under 11 U.S.C. § 1322(b)(2)); *In re McDonald,* 205 F.3d 606 (3d Cir. 2000) (same), *cert. denied,* 531 U.S. 822 (2000); *In re Bartee,* 212 F.3d 277 (5th Cir. 2000) (same); *In re Lane,* 280 F.3d 663 (6th Cir. 2002) (same); *In re Zimmer,* 313 F.3d 1220, 1227 (9th Cir. 2002) (same); *In re Tanner,* 217 F.3d 1357 (11th Cir. 2000) (same).

However, Brinson insists that the plain language of § 506(d) alone shows that provision is self-executing once collateral is valued under § 506(a). According to Brinson, reliance by some judges on the reorganization provisions in the Code, such as § 1322(b)(2), misinterprets Supreme Court precedent and the Code itself. Section 1322(b)(2), he maintains, was not intended to be a means for avoiding a lien but was intended to limit a debtor's ability to "void liens that otherwise could be avoided by operation of Sections 506(a) and (d). Brinson insists that a contrary interpretation would render § 506(d) superfluous in violation of the well-established

11

rule that courts interpret a statute in such a way as to give meaning to all of its terms. *Negonsott v. Samuel*, 507 U.S. 106 (1993).

Brinson cites, *Berkebile v. Ocwen Loan Servicing, LLC et al. (In re Berkebile)*, 444 B.R 326 (Bankr. W.D. Pa. 2011), which opined that "[t]ogether, subsections (a) and (d) of S. 506 provide the statutory basis for lien stripping under the Bankruptcy Code." *Id.* at 330 (citing *In re Johnson*, 386 B.R. 171, 173 (Bankr. W.D. Pa. 2008) *aff'd* 415 B.R. 159 (W.D. Pa. 2009)) The *Berkebile* Opinion did not further explain this statement. *See id.* However, two paragraphs later the bankruptcy judge noted that "the Debtor may avoid the federal tax lien under the bifurcation and modification processes established by §§ 506 and 1123 of the Bankruptcy Code" after analyzing whether lien stripping is permitted in Chapter 11 *Id.* at 330-31. Therefore, that case does not support Brinson's argument that § 506 by itself acts to void the IRS' liens.

In fact, even the precedent cited by the *Berkebile* Opinion acknowledged some question as to whether § 506 itself provides authority to strip a lien. *Johnson v. IRS (In re Johnson)*, 386 B.R. 171, 175 n.5 (Bankr. W.D. Pa. 2008). In that case, the debtor invoked § 506 as the basis for relief and the creditor did not object. The bankruptcy judge stated, without deciding, that even if § 506 was itself insufficient to void a lien that "this Court . . . would not deny the Debtor the relief he seeks solely because the Complaint refers only to Section 506 because that would elevate form over substance." *Id.* The bankruptcy judge stated rather that he would "treat the matter as tried by consent pursuant to Fed. R. Bankr. P. 7015(b)(2) or grant the Debtor leave to file an amended complaint." *Id.*

In the instant case the IRS argues that § 506 is not the proper statute to void its liens. Despite that opposition, Brinson has decided in his brief to stand on his position in the Complaint that § 506 itself, and no other provision, supports the relief he seeks.

This stubborn position is exactly that of the debtor in a recently decided case from the Tenth Circuit, *Woolsey v. Citibank, N.A.*, 696 F.3d 1266 *(In re Woolsey)*, (10th Cir. 2012). In *Woolsey*, the debtor sought to void a junior mortgage because it was unsupported by any value in the property. *Id.* at 1267. The debtor, as Brinson, rejected the possibility that the reorganization provisions in Chapter 13 could provide the relief sought. *Id.* The *Woolsey* Opinion analyzed whether Chapter 13 debtors may void liens secured by no remaining value in the collateral. *Id.* at 1272. It concluded that they may, but that § 506 is not the proper means of voiding such liens because of the holding in *Dewsnup*. *Id.* at 1278.

12

*Woolsey* based that conclusion largely on the reasoning in *Dewsnup*, discussed above. *Id.* at 1274. Courts extend *Dewsnup* to Chapter 13 by reasoning that 11 U.S.C. § 103 governs and provides that "[e]xcept as provided in chapter 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12 or 13 of this title. *See Nobleman v. Am. Sav. Bank*, 508 U.S. 324, 328 n.3 (1993). Following *Dewsnup*, a creditor's lien may be voided using § 506(d) only if it is determined that the creditor's claim is not allowed and secured. Whether a claim is allowed depends on § 502, which provides that a proof of claim timely filed is deemed allowed, unless a party in interest objects. 11 U.S.C. § 502(a). The parties do not dispute that the IRS' claims involved here are allowed under that provision.

Rather, Brinson argues that the IRS' claim is not "secured" because no value remains in the collateral so that the IRS' liens may therefore be avoided pursuant to § 506(d). Such attempts have been repeatedly rejected. As stated in *Woolsey*, *Dewsnup* held that "value in the collateral has no bearing on the lien-voiding language of § 506(d): *any* lien secured under state law must be respected and protected from removal." *Id.* at 1273.

In this case, the IRS has placed liens on Brinson's personal property pursuant to § 6321 of the Internal Revenue Code, Title 26 U.S.C. That section provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. A lien under § 6321 is effective, after notice and demand, from the date the tax is assessed. Here, a tax was assessed for each taxable year at issue and a lien arose as to all of Brinson's property and rights to property. Brinson does not dispute the existence of the IRS' liens. In addition, the IRS also filed two Notices of Federal Tax Lien in accordance with 26 U.S.C. § 6323(f) with the Cook County Recorder. Brinson does not dispute this fact. Brinson has not alleged that the IRS' are invalid under applicable law and has not offered any principled distinction between liens secured under state law and those secured under federal law. Therefore, the IRS' liens are "secured" for purposes of § 506(d).

The *Woolsey* Opinion, while critical of the reasoning and holding of *Dewsnup*, nevertheless acknowledged that it was bound by that decision and refused to void the lien under § 506(d). *Id.* at 1278. However, the Opinion observed, "... it's perhaps no surprise that of all

13

the circuit courts approving of lien stripping in reorganization cases, not a single one has taken up the Woolsey's invitation to do so using § 506(d). Instead, they have relied exclusively on other statutory provisions particular to those chapters." *Id.* at 1278 (citing *Wade v. Bradford*, 39 F.3d 1126, 1129 (10th Cir. 1994) (permitting lien stripping in Chapter 12 cases under 11 U.S.C. § 1225(a)(5)); *In re Lane,* 280 F.3d 663 (6th Cir. 2002) (permitting lien stripping in Chapter 13 cases under 11 U.S.C. § 1322(b)(2)); *Collier on Bankruptcy* ¶ 506.06[1] ("[T]here is no principled way to conclude that, although section 506(d) does not authorize lien stripping in chapter 7 cases, it has a different meaning in chapter 11, 12, and 13 matters."); *see also In re Scantling*, 465 B.R. 671 (Bankr. M.D. Fla. 2012) ("Section 506(d) must operate in tandem with another Bankruptcy Code provision to strip a lien."). Therefore, *Dewsnup* applies in Chapter 13 to the extent a debtor relies solely on § 506(d) to void a lien unsupported by value in the collateral. Brinson therefore cannot seek relief under that provision by itself.

However, this defect is not fatal to Brinson's Complaint. Under federal notice pleading standards, a complaint need not cite the appropriate statute or law to raise a claim for relief. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992). A complaint sufficiently states a claim even if it points to the wrong legal theory if facts alleged give plausible notice of a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Therefore, Count I of Brinson's Complaint will not be dismissed merely because its request for relief is based on a pleading of inadequate statutory citation. Brinson may still seek to void the IRS' liens pursuant to any applicable statute including 11 U.S.C. § 1322(b)(2) through his Chapter 13 plan and therefore may seek to adjudicate Count I contingent on confirmation and completion of his Plan.

### *Timing of Request to Void Lien*

In its Motion, the IRS asserts that lien stripping is only permitted upon completion of a plan of reorganization or upon discharge. It also argues that a lien may be modified in a Chapter 13 case only pursuant to a plan. In his Complaint, Brinson's prayer for relief seeks an order "[o]rdering the IRS to release its lien except to the extent that the IRS has an allowed secured claim." This is an apparent request by Brinson for immediate avoidance of the IRS' liens to the extent they are determined to be unsecured under § 506(a). Brinson also asks for an relief "[o]rdering the IRS to release its lien on the Plaintiff's property upon entry of a discharge in the Plaintiff's underlying bankruptcy case." This prayer does not seek immediate relief.

14

A lien cannot be avoided before discharge is entered under 11 U.S.C. § 1328. *In re Erdman*, 446 B.R. 861, 868 (Bankr. N.D. Ill. 2011). Therefore, Brinson's request, if any, for immediate release of the IRS' liens cannot be granted.

However, Brinson's Adversary Proceeding is not premature. Rule 7001(2) requires an Adversary proceeding to determine the "validity, priority, or extent of a lien or other interest in property" and to obtain a judgment relating to an applicable lien interest. Fed. R. Bankr. P. 7001(2) and 7001(9), respectively. In *In re Forrest*, 424 B.R. 831, 835 (Bankr. N.D. Ill. 2009) it was held therein that due process entitles the mortgagee to the heightened notice through service of summons and complaint in an adversary proceeding, and debtor cannot instead include a provision in the Chapter 13 plan and expect it to bind a mortgagee who has not voluntarily appeared in the case. *See also In re Stewart*, 408 B.R. 215, 219 (Bankr. N.D. Ind. 2009), interpreting *In re Hanson*, 397 F.3d 482 (7th Cir.2005) ("a chapter 13 plan, *in and of itself*, cannot affect creditors' interests in a circumstance in which those interests are the subject of a separate procedural mechanism under the Bankruptcy Code").

Accordingly, Brinson was required by the Rules to file this Adversary. Any order entered in this adversary proceeding to determine the extent, priority, and validity of liens will contain language releasing liens effective only upon completion of Brinson's plan and entry of an order discharging the debtor. (*See also*, 12 A 1782, Dkt. No. 7; 12 A 1197, Dkt. No. 14; 12 A 1494, Dkt. No. 13) Therefore, the Adversary may proceed but release of the IRS' liens will occur, if at all, upon completion of Brinson's Plan and receipt of his Chapter 13 discharge.

*Conclusion as to Count I*

Pursuant to the foregoing discussion, Count I of Brinson's Complaint will not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because he has stated a claim upon which relief can be granted.

**Declaratory Judgment Issue Raised by Brinson Complaint (Count III)**

Finally, in Count III of his Complaint, Brinson seeks what he terms a declaratory judgment as to the relationship between the IRS and him with respect to each individual tax year included in the IRS' claim. The United States challenges the court's authority to render such declaratory judgment on the ground that any proceeding seeking a declaratory judgment with respect to federal taxes brought in bankruptcy court is barred by the Declaratory Judgment Act unless it falls within the scope of § 505 or § 1146 of the Bankruptcy Code, and that Brinson does

not seek a determination as to the amount or legality of the tax liability under § 505 or any determination under § 1146. The Government further argues that the Declaratory Judgment Act is procedural only and does not in itself constitute a waiver of sovereign immunity.

"The bankruptcy court clearly has the power in the first instance to determine whether it has jurisdiction to proceed." *In re UAL Corp.*, 336 B.R. 370, 372 (Bankr. N.D. Ill. 2006) (citing *Visoneering Const. & Dev. Co. v. U.S. Fid. & Guar. (In re Visoneering Const.)*, 661 F.2d 119, 122 (9th Cir. 1981)).

The Declaratory Judgment Act provides, in pertinent part:

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

Bankruptcy courts are among the federal courts that may grant declaratory relief under authority of the Declaratory Judgment Act. *In re City of Cent. Falls, R.I.*, 468 B.R. 36 (Bankr. D.R.I. 2012); *In re Downingtown Indus. & Agr. School*, 172 B.R. 813 (Bankr. E.D. Pa. 1994). However, this grant of judicial power is subject to two limitations. First, the Act provides that declaratory judgments may only be entered in "a case of actual controversy." 28 U.S.C. § 2201(a). Second, the Act denies any power to enter a declaratory judgment "with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, [or] a proceeding under section 505 or 1146 of title 11." 28 U.S.C. § 2201(a). The United States challenges this court's authority to determine the relationship between it and Brinson because of the foregoing statutory limitation respecting federal tax issues.

Under the tax limitation clause of the Declaratory Judgment Act, lower federal courts are denied the power to issue declaratory judgments with respect to federal taxes except in three specified proceedings—(1) actions pursuant to § 7428 of the Internal Revenue Code of 1986, (2) proceedings under § 505 of the Bankruptcy Code and (3) proceedings under § 1146 of the Bankruptcy Code. 28 U.S.C. § 2201(a); *Sterling Consulting Corp. v. United States*, 245 F.3d

1161, 1165–66 (10th Cir. 2001). Brinson's Complaint does not identify the basis for his claim for relief under the Act, only that "there is a controversy between the Plaintiff and the IRS." The IRS in its motion to dismiss argues that "the debtor here does not seek a determination of the tax liability under 11 U.S.C. § 505, and the amount of the tax debt is not at issue . . . ." However, in his brief responding to the IRS' motion to dismiss, Brinson claims that his Complaint does seek a determination as to how much money he owes for each tax year, which he claims falls squarely within authority under § 505(a)(1) of the Bankruptcy Code, which provides "[e]xcept as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."

However, Brinson's Complaint does not plead a claim for determination as to the amount or legality of his tax debts. His Complaint merely seeks to determine the nature and extent of liens held by the IRS, not the amount or legality of the underlying tax debt. Brinson has not even filed an objection to the IRS' proof of claim filed against him in his Bankruptcy case. Therefore, § 505 does not permit Brinson's request for relief in Count III, and the Declaratory Judgment Act does not apply.

A declaratory judgment is a remedy for an underlying cause of action, not a separate, substantive claim for relief. *In re Ryan*, 2012 WL 4959632, at *6 (citing *Scanlon v. Northwest Mortgage, Inc.*, No. 11–3128 (MJD/TNL), 2012 WL 2885131, at *7 (D.Minn. July 13, 2012); *Thomas v. Wells Fargo Bank, N.A.*, No. CV10–901–PHX–GMS, 2010 WL 3401060, at *4 (D. Ariz. Aug. 26, 2010)). Count II of the Complaint seeks an adjudication under 11 U.S.C. § 523(a)(1) that certain debts owed to the IRS are dischargeable but that does not require declaratory relief. When a request for adjudication is encompassed within a plaintiff's substantive claims, the "plaintiff can obtain relief without the aid of a separate declaratory judgment claim." *Id.* (citing *AET Rail Group, LLC v. Siemens Transp. Sys., Inc.*, No. 08–CV–6442, 2009 WL 5216960, at *6 (W.D.N.Y. Dec. 30, 2009)). Therefore, Count III may be stricken pursuant to Fed. R. Civ. P. 12(f) [made applicable by Rule 7012 of the Fed. R. Bankr. P.], which permits a court to strike from a pleading "any redundant ... matter" and even allowing the court to do so "on its own," without a request from a party. *Id.* (citing *Wine & Canvas Dev., LLC v. Weisser*, No. 1:11-cv-01598-TWP-DKL, 2012 WL 3260234, at *11 (S.D. Ind. Aug. 7, 2012)).

Accordingly, the declaratory judgment claim for relief in Count III of Brinson's complaint will be dismissed as redundant.

## CONCLUSION

For reasons stated above, Defendant United States' Motion for Partial Dismissal will be allowed as to Count III under Fed. R. Civ. P. 12(b)(6) but will otherwise be denied. Status will be set as to further proceedings.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 28th day of January, 2013

18